# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ALBEMARLE CORPORATION       :
:
     Plaintiff,               :
:
v.                         :     C.A. No. 05-1239-JJB-SCR
:
CHEMTURA CORPORATION and  :
GREAT LAKES CHEMICAL CORP  :
:
     Defendants.          :

## ALBEMARLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT AND SANCTIONED FOR VIOLATING THIS COURT'S PROTECTIVE ORDER

**KEAN, MILLER, HAWTHORNE, D'ARMOND, McCOWAN & JARMAN L.L.P.**
G. William Jarman (7238)
L. Victor Gregoire (22400)
Twenty-second Floor
One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 387-0999
*Attorneys for Plaintiff,*
  *Albemarle Corporation*

<u>OF COUNSEL</u>**:**
Rudolf E. Hutz
Eric J. Evain
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899-2207
Telephone: (302) 658-9141

**DATED:** September 11, 2008

# TABLE OF CONTENTS

I.    SUMMARY ...................................................................................1

II.    BACKGROUND ..........................................................................4

    A.    Patent Reexamination.....................................................4

    B.    Facts Leading To The Current Motion...........................8

    C.    Relevant Provisions Of The Protective Order.............11

    D.    Defendants Demanded That The Protective Order
          Include The Very Prohibition They Claim Does Not
          Exist ................................................................................12

    E.    Defendants' Pending Motion ........................................14

    F.    In July 2007, Albemarle Caught Defendants Violating
          The Protective Order And Received Written
          Assurance They Would Not Do It Again.....................15

III.    LEGAL STANDARDS ..............................................................17

    A.    Contempt........................................................................17

    B.    Sanctions And Relief....................................................18

IV.    DEFENDANTS SHOULD BE ENJOINED FROM FURTHER
        PARTICIPATION IN ANY REEXAMINATION .....................19

V.    EXCLUSION OF DEFENDANTS' EXPERT, DR. JOHN REFFNER ..................21

    A.    Dr. Reffner Used And Publicly Disclosed Information
          He Learned Solely In Connection With This Litigation ...........................21

    B.    Dr. Reffner's Access To Albemarle's Confidential
          Information Is A Privilege, Not An Entitlement...........24

VI.    EXCLUSION OF ALL INDIVIDUALS ACTIVELY INVOLVED IN
        THESE VIOLATIONS ...............................................................26

VII.    RELIEF FROM THE PROTECTIVE ORDER ......................27

# TABLE OF CONTENTS

**PAGE**

VIII. COSTS AND FEES ............................................................................29

IX. CONCLUSION ...............................................................................29

Case 3:05-cv-01239-JJB-SCR Document 390-1 09/11/08 Page 3 of 37

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
228 F.3d 574 (5th Cir. 2000) ...................................................................19

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 111 S.Ct. 2123 (1991) .........................................................17

*FDIC v. LeGrand*,
43 F.3d 163 (5th Cir. 1995) ......................................................................18

*Greiner v. City of Champlin*,
152 F.3d 787 (8th Cir. 1998) ....................................................................17

*In re Zyprexa Injunction*,
474 F. Supp. 2d 385 (E.D.N.Y. 2007) ......................................................20

*Lamar Fin. Corp. v. Adams*,
918 F.2d 564 (5th Cir. 1990) ....................................................................17

*Lyn-Lea Travel v. Am. Airlines, Inc.*,
238 F.3d 282 (5th Cir. 2002) ..............................................................17, 22

*Marrocco v. General Motors Corp.*,
966 F.2d 220 (7th Cir. 1992) ....................................................................18

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
81 F.3d 1576 (Fed. Cir. 1996) ...................................................................7

*Sony Computer Entm't Am. Inc. v. Dudas*,
No. 05-1447, 2006 WL 1472462 (E.D. Va. May 22, 2006) .......................5

*Toon v. Wackenhut Corrections Corp.*,
250 F.3d 950 (5th Cir. 2001) ....................................................................23

*United States v. United Mine Workers of Am.*,
330 U.S. 258, 67 S.Ct. 677 (1947) ...........................................................19

*Visto Corp. v. Seven Networks, Inc.*,
No. 03-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) .................18, 25

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 4 of 37

# TABLE OF AUTHORITIES

PAGE(S)

*Walle Corp. v. Rockwell Graphics Sys.*,
  No. 90-2163, 1992 WL 165678 (E.D. La. July 6, 1992) .................................14, 18

*Walle Corp. v. Rockwell Graphics Sys.*,
  No. 90-2163, 1992 WL 245659 (E.D. La. Sep. 14, 1992) ...................................14


## STATUTES

35 U.S.C. §301 ....................................................................................5

35 U.S.C. §302 ....................................................................................4

35 U.S.C. §303 ....................................................................................4

35 U.S.C. §305 ....................................................................................4

35 U.S.C. §311(b)(1) ..........................................................................5

35 U.S.C. §315(b) ..............................................................................5

35 U.S.C. §315(c) ...........................................................................5, 6

35 U.S.C. §317(b) ..............................................................................6

37 C.F.R. §1.11(d) ..............................................................................7

37 C.F.R. §1.555 ..........................................................7, 23, 27, 28

37 C.F.R. §1.939(b) ..........................................................................24

Fed. R. Civ. P. 65 .............................................................................19


## OTHER AUTHORITIES

H. Rep. No. 96-1307(I) (1980) ..........................................................4

Manual of Patent Examining Procedure 2632 ..................................7

Manual of Patent Examining Procedure 724.03 ..............................8

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 5 of 37

# TABLE OF AUTHORITIES

**PAGE(S)**

Manual of Patent Examining Procedure 724.04(c) ........................................................7

Pub. L. No. 106-113 (1999) .................................................................................5

Pub. L. No. 96-517 (1980) ..................................................................................5

**I.      SUMMARY**

Albemarle Corporation ("Albemarle") moves this Court for an Order to Show Cause why Chemtura Corporation and Great Lakes Chemical Corporation (collectively "defendants") should not be held in contempt and sanctioned for numerous violations of this Court's Order Governing the Protection and Exchange of Discovery Material (rec. doc. 15; "Protective Order"; Ex. A). For relief, Albemarle seeks the exclusion of those who knowingly participated in these violations from further involvement in this suit, an opportunity to investigate the full scope of the violations, an injunction preventing defendants from further activity in a Patent Office reexamination that would not have started but for defendants' violations, and reimbursement of Albemarle's reasonable costs and attorney fees.

This is not the first time defendants were caught violating this Court's Protective Order.  A year ago, Albemarle learned that defendants unilaterally decided to share with two of their employees a brief that Albemarle had filed with this Court under seal.  When Albemarle confronted defendants with this violation, they attempted to justify their actions using the same meritless arguments they assert today.  Defendants contended that they alone can decide to ignore express provisions in the Protective Order if they conclude it would not harm Albemarle.  When Albemarle then threatened to bring the issue to this Court's attention, defendants provided written assurance that it would never happen again, rather than risk having their excuses exposed to this Court.  Now, defendants have ignored those promises too.

These latest violations surfaced because of a request defendants recently filed with the United States Patent and Trademark Office ("PTO") asking the PTO to

1

reexamine Albemarle's patent in suit (U.S. Patent No. 6,958,423; "the '423 patent"). Defendants' now public request uses information defendants learned from Albemarle's Highly Confidential documents; information that was contained in papers that Albemarle filed with this Court under seal; and information that defendants obtained only through discovery in this litigation.

The Protective Order specifically bars the use of information from these sources for any purpose outside this litigation.

Further, defendants' testifying expert, Dr. John Reffner, who swore under oath that he understood and would abide by the restrictions placed on him by the Protective Order, ignored those restrictions and submitted a Declaration to the PTO (also now public) to support defendants' reexamination request. The mere submission of the Reffner Declaration violates the Protective Order and Dr. Reffner's obligations. Moreover, Dr. Reffner's Declaration is intentionally misleading, if not deliberately false.

Albemarle confronted defendants with these most recent violations as soon as they became known. Defendants then attempted to rationalize their actions by claiming that they are permitted to publicly disclose information, notwithstanding the Protective Order, if defendants alone conclude that the information is not confidential and that its use and public disclosure would not harm Albemarle. Defendants are profoundly wrong about the harm they have caused Albemarle, and about their ability to make such unilateral decisions -- the Protective Order specifically prohibits unauthorized use or disclosure without first obtaining Albemarle's or the Court's authorization.

Unfortunately, now there is no way to prevent the PTO from considering defendants' reexamination request, even though: (1) it was submitted in violation of the

Court's Protective Order; and (2) its outcome eventually will be mooted by the results of this litigation. Furthermore, while the PTO initially considers defendants' request and the Reffner Declaration, PTO procedures prohibit Albemarle from responding. The PTO will make its decision whether to grant reexamination based on the misleading record defendants have created without giving Albemarle the right to correct misstatements or cross-examine Dr. Reffner.

The PTO must decide whether to grant defendants' reexamination request within three (3) months from the date it was filed (August 14, 2008). It is virtually certain that the PTO will reexamine the '423 claims because, as a matter of practice, the PTO grants over 95% of all such requests. Simply by making the request, defendants have all but guaranteed that, regardless of merit, a reexamination will occur, thereby compounding the harm they have caused Albemarle by violating the Court's Order.

Another problem created by defendants' contempt is that once the reexamination procedure begins, Albemarle has a duty to disclose to the PTO all information that is material to the reexamination. Material information submitted to the PTO is made public regardless of confidentiality, including highly confidential information. And to be clear, Albemarle does not have a choice, because the failure to disclose material information to the PTO could render the '423 patent unenforceable. Thus, by violating the Protective Order, defendants have virtually guaranteed that Albemarle will have to publicly disclose more of its confidential information, and nothing can be done to stop it.

The provisions violated by defendants are written in simple, clear language. They were not unknown to defendants when the current violations occurred. They are provisions negotiated by the parties to protect their respective interests, agreed to by

defendants and approved by this Court.  A similar Protective Order was entered in other litigations between the parties, now pending before Judge Parker.  Furthermore, defendants' attention was specifically called to several of these provisions when defendants agreed to respect and abide by them, the last time they were caught.

As the Court will see, to try and excuse their behavior, defendants offer completely disingenuous arguments and tortured interpretations of the Protective Order and of their own reexamination request.  Their bad faith is clear, as is their disregard for this Court's Orders.

## II.    BACKGROUND

The issue before this Court centers on defendants' recent submission to the PTO requesting an *inter partes* reexamination of the '423 patent.  Because this is a unique aspect of Patent Law, a discussion about that procedure is necessary.

### A.    Patent Reexamination

Intended as an alternative to litigation in the District Courts, patent reexamination is a procedure where any person can request that the PTO reassess the patentability of one or more claims of an issued patent. 35 U.S.C. §302; H. Rep. No. 96-1307(I) at *3-4 (1980); (Ex. B).  A reexamination request can be based only on prior art in the form of issued patents or printed publications and the request is reviewed by the PTO to determine if the prior art raises a substantial new question of patentability. 35 U.S.C. §303.  If the request is granted, the PTO conducts its reexamination of the patent claims in essentially the same manner as when it examined the original patent application. 35 U.S.C. §305.  The patent claims can be amended during reexamination but they cannot be broadened. *Id.*

Reexamination proceedings have been a part of the Patent Laws since 1980 (Pub. L. No. 96-517)(1980). For the first twenty years, the law permitted only *ex parte* reexaminations. In an *ex parte* proceeding, the party that requested the reexamination could ask that its identity be hidden, thus protecting it from a possible infringement suit by the patent holder. 35 U.S.C. §301. But beyond the initial stages, a third party requester is not permitted to participate further in an *ex parte* reexamination.

In 1999, Congress passed the American Inventors Protection Act (Pub. L. No. 106-113)(1999). Among the changes made to the Patent Laws, primarily to bring them in line with the laws of other countries, Congress created an *inter partes* reexamination procedure. This was a response to the increasing volume of patent litigation in Federal District Courts. *Sony Computer Entm't Am. Inc. v. Dudas*, No. 05-1447, 2006 WL 1472462, at *4 (E.D. Va. May 22, 2006) (Ex. C)

In contrast to *ex parte* proceedings, the third party requester in an *inter partes* reexamination may participate throughout the proceedings. 35 U.S.C. §315(b). This includes the right to comment on responses submitted by the patent owner, to appeal an adverse decision to the PTO's Board of Appeals, and to participate in appeals to the Federal Circuit. *Id.*

Unlike *ex parte* proceedings, the third party *inter partes* requester must be identified (and the defendants are so identified in the request at issue here). 35 U.S.C. §311(b)(1). Moreover, because *inter partes* reexaminations were created as an alternative to litigation, if the PTO confirms the patentability of the claims, the third party requester is precluded from certain later challenges to those claims in the District Court. 35 U.S.C. §315(c). This statutory estoppel, imposed on *inter partes* reexamination

5

requesters, applies to all arguments made or that could have made in the reexamination. *Id.*

If a defendant is involved in patent litigation in the District Court at the same time they provoke an *inter partes* reexamination in the PTO, a final decision in the litigation addressing the validity of the claims automatically terminates the *inter partes* proceedings. 35 U.S.C. §317(b). Thus, if the *inter partes* reexamination is still pending before the PTO, a final decision in the litigation ends the reexamination. *Id.*

The average time period to conclude an *inter partes* reexamination is difficult to measure. Only a handful of *inter partes* reexaminations have been completed (27 of over 436) (Ex. D) and the majority of those terminated examinations involved situations where the patent owner did not oppose (Ex. E at 19). Not a single *inter partes* reexamination has made it far enough through the process where a result by the PTO's Board of Appeal can be taken to the Federal Circuit (*Id.* at 15, 18). The PTO's annual statistics suggest an average pendency of 32.7 months for an *inter partes* reexamination (Ex. D). However, those numbers are skewed because the majority of these cases in that average were not opposed by the patent holder (it still took two years) (Ex. E at 19). A recent analysis of the status of all pending cases concluded that *inter partes* reexaminations can be expected to take much longer, between five and eight (5 - 8) years (*Id.* at 15).

The procedural aspects of an *inter partes* reexamination are complex (Ex. E at 8), but three points are particularly relevant to the issue before this Court. Each point is well known to those who litigate patent cases or practice before the PTO.

First, as a matter of practice, the PTO grants 95% of all *inter partes*

reexamination requests, so whatever threshold exists to raise a substantial new question of patentability has not been difficult to meet (Ex. D).

Second, once an *inter partes* reexamination is ordered, Albemarle has a duty to disclose to the PTO all information that is material to the reexamination. 37 C.F.R. §1.555 (Ex. F). Albemarle must make this disclosure within two months after the reexamination is ordered, or as soon thereafter as possible. *Id.* In part, this is why Albemarle seeks expedited treatment of its motion. Albemarle's disclosure to the PTO must include <u>all</u> information material to the reexamination, even if it is highly confidential. The duty applies to the patent owner only, <u>not</u> to the third party requester.

Finally, all documents submitted to the PTO during an *inter partes* reexamination are made promptly available to the public by posting on a PTO website called "PAIR." 37 C.F.R. §1.11(d).[1] While defendants have correctly noted that there is a procedure for submitting confidential information to the PTO (rec. doc. 386 at ¶9), if the PTO determines that information submitted in a reexamination is material, it will be made public regardless of its confidential nature. M.P.E.P. 724.04(c) (Ex. G).[2] Also, the procedure for submitting confidential information to the PTO does not apply to

---

[1] PAIR is the PTO's <u>P</u>atent <u>A</u>pplication <u>I</u>nformation <u>R</u>etrieval database. It can be accessed from the internet at http://portal.uspto.gov/external/portal/pair Defendants' reexamination request at issue can be found under application no. 95/000391. The reexamination request, and Dr. Reffner's Declaration, are also publicly available at the PTO just outside of Washington, D.C. M.P.E.P. 2632.

[2] The "M.P.E.P." is the Manual of Patent Examining Procedure which describes the standards and procedures that the PTO uses in carrying out its functions. The M.P.E.P. does not have the force of law but is entitled to judicial notice as the agency's official interpretation of statutes and regulations. *Refac Int'l, Ltd. v. Lotus Dev. Corp.,* 81 F.3d 1576, 1584, n. 2 (Fed. Cir. 1996).

Case 3:05-cv-01239-JJB-SCR    Document 390-1    09/11/08    Page 13 of 37

information that supports patentability. M.P.E.P. 724.03 (Ex. G). Thus, if Albemarle must submit confidential information to rebut the misstatements in defendants' request and the Reffner Declaration, that information cannot be submitted in confidence.

### B.    Facts Leading To The Current Motion

Fact discovery in this case closed in June 2007. Expert discovery concluded in February 2008, with the exception of a few damages-related depositions that the parties agreed to defer until closer to trial. Defendants have since filed six summary judgment motions, two of which are particularly relevant because they are based on the same arguments that defendants included in their subsequently-filed reexamination request (rec. doc. 294, 339).

Defendants filed the request on August 14, 2008, through the Virginia law firm of Roberts Mlotkowski Safran & Cole, P.C. ("the Roberts Law Firm"). Defendants asked the PTO to reexamine the patentability of all claims in the '423 patent based on two prior art patents belonging to Albemarle; U.S. 5,030,778 and 5,124,496 ("the '778 patent" and "the '496 patent" respectively).[3]

While defendants filed their reexamination request only within the last month, it is not based on some newly discovered prior art. Defendants have known about the '778 and '496 patents for years. In fact, Albemarle sued defendants for infringing both of them five years ago in Judge Parker's cases (civil action nos. 3:02-cv-505, -506 at rec. doc. 150). Despite this knowledge, defendants did not request reexamination until after

---

[3]   The reexamination request, with all attachments, is over 100 pages long. Exhibit H includes the body of the request without every attachment. Exhibit I contains the Reffner Declaration which was submitted as one of the original attachments.

discovery in this case was concluded and only <u>after</u> Albemarle responded to their summary judgment motions (Albemarle responses are at rec. doc. 332 and 361).

In responding to defendants' summary judgment motions, Albemarle noted that each was fatally defective because, *inter alia*, defendants did not present any expert testimony to support their positions (rec. doc. 332 at 1, 7, 10, 14) (rec. doc. 361 at 1, 2, 6, 9, 10 15).  Thus, it is neither surprising nor coincidental that when defendants repeated these same arguments to the PTO in their recent request, they included a Declaration from one of their litigation experts, Dr. Reffner.  That is misuse of information outside this litigation that was learned -- indeed induced -- during this case.

Defendants also learned that their summary judgment motions are likely to be stricken from this case.  Defendants failed to disclose the corresponding defenses during discovery so Albemarle moved to strike their defenses (rec. doc. 376, now pending before the Special Master).  Defendants soon realized that their arguments may never be considered absent a reexamination.

It is not open to question that defendants' reexamination request relies on Albemarle's summary judgment responses.  The reexamination request expressly cites to documents that Albemarle filed with this Court under seal, apparently to suggest that defendants' arguments are somehow strengthened by positions Albemarle took during litigation (Ex. H at n. 1 and n. 2, pp 8-9).  In fact, defendants concede that they prepared their reexamination request and their summary judgment reply brief at approximately the same time (rec. doc. 386 at 3, ¶5).  Defendants also admit that they shared documents that were filed under seal with The Roberts Firm (Ex. K at 2), and that their reexamination discloses Albemarle's litigation positions (Ex. L at 2).

9

When Albemarle learned of defendants' reexamination request, it immediately brought its concerns to the attention of Mr. Roberts because he is not authorized to see documents that Albemarle filed with this Court under seal (Ex. M).[4]  In fact, defendants admit that The Roberts Firm is not involved in this litigation (rec. doc. 386 at 3, ¶5) and that Mr. Roberts is not one of the few individuals who are authorized to receive confidential material under the Protective Order (Ex. K at 2).

Moreover, no person, including those permitted to receive information under the Protective Order, is allowed to use any information learned in this litigation, confidential or otherwise, for any purpose outside the lawsuit:

> All Discovery Material <u>and information</u> provided by either party, <u>regardless of designation</u>, shall be used solely for purposes of this Action and <u>shall not be used for any other purpose</u>, including, without limitations, any business, proprietary, commercial or governmental purpose (Ex. A, at ¶3) (emphasis supplied).

Albemarle insisted that Mr. Roberts and the defendants explain these clear violations of the Protective Order (Exs. M and N).  Albemarle also asked The Roberts Firm to consent to the jurisdiction of this Court for purposes of resolving this matter.

Mr. Roberts has never responded to Albemarle's original letter, or to its follow-up letter (Ex. O).  Defendants' trial counsel, however, did respond and provided the following explanation, which stands in stark contrast with the Protective Order's clear prohibition against the use of information learned during this litigation:

> It is not a "violation" of the protective order to use information obtained from this litigation for purposes outside this litigation.  . . . (Ex. L at 2)

---

[4]  Albemarle sent a copy of this letter to defendants' counsel (Ex. N).  The complete correspondence between the parties is complied in chronologic order in Exhibit J.

Regarding Dr. Reffner's Declaration, in which he publicly disclosed his interpretation of Albemarle's Highly Confidential information, defendants stated simply: "The protective order is not a gag order." (Ex. L at 1).  Albemarle disagrees.

### C.    Relevant Provisions Of The Protective Order

The Protective Order includes several provisions, written in clear and simple language, to guard against the improper use and disclosure of information learned in this litigation during discovery or through motions practice.  These include the following.

As noted above, paragraph 3 limits the use of <u>any</u> information learned through this litigation for <u>any</u> purpose outside this lawsuit.  This includes all information, confidential and non-confidential.  Indeed, as shown below (section II(D)), despite now claiming that it does not exist, defendants added that prohibition to the Protective Order.

Paragraphs 5 and 6 of the Protective Order identify the individuals, by category, who are permitted access to confidential and highly confidential information.  Paragraph 7 requires that certain individuals who are exposed to confidential and highly confidential information, including experts such as Dr. Reffner, must be instructed by counsel of their confidentiality obligations and the limited use that they can make of the information learned during this litigation.  Paragraph 7 also requires that these individuals execute a written Undertaking swearing under oath that they understand the Protective Order, that they will abide by those provisions and that a violation is contempt of Court.[5]

---

[5]  The parties later agreed that briefs filed under seal could be shared with their in-house counsels. That is the only agreed-to exception to the Protective Order.

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 17 of 37

Paragraph 9 of the Protective Order requires that papers must be filed under seal if they contain confidential or highly confidential information. Paragraph 12 prohibits "self help." If a party believes that a document is incorrectly designated as confidential, it must follow the procedures set forth in paragraph 16 to challenge the designation. Paragraph 12 states specifically that a party "shall not unilaterally disclose or use the disputed Discovery Material until the challenge is resolved."

The procedure set forth in paragraph 16 requires that a party who disagrees with a confidentiality designation must provide written notification of their disagreement to the opposing party and make a good faith effort to resolve the matter before involving the Court. Until resolved, the disputed material must be treated as designated.

### D. Defendants Demanded That The Protective Order Include The Very Prohibition They Claim Does Not Exist

The history of the Protective Order demonstrates that the prohibition against the use of any information outside this litigation, regardless of confidentiality designation, was something that <u>defendants</u> insisted on in the Protective Order.

In all relevant aspects, the Protective Order in this case is the same as the two Protective Orders that Judge Parker entered in his cases (civil action no. 3:02-cv-505 at rec. docs. 60 and 249).[6]  The scope and language was the subject of extensive negotiation between the parties and once agreement was reached, it was presented to the Court as a joint submission (civil action no. 3:02-cv-505 at rec. docs. 51 and 246).

---

[6] The differences are not relevant. The description of the technology in-suit obviously differs. The Protective Orders in Judge Parker's cases account for defendants' use of outside counsel as "acting in-house counsel" and the Protective Order in this case addresses the use of documents that were produced in Judge Parker's cases.

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 18 of 37

Having already reached agreement on the language in Judge Parker's cases, the parties agreed to use the same Protective Order in this case (Ex. P).  Defendants had the opportunity to modify the original provisions but chose not to do so. Once again, the Protective Order was presented to this Court as a joint submission.

During the original negotiation over the language of the order, Albemarle drafted the initial version.  Albemarle's version of paragraph 3 prohibited the use of confidential information, and only confidential information, outside the lawsuit.

> **Albemarle's Proposed Paragraph 3:** <u>Confidential and Highly Confidential Discovery Material and information derived therefrom</u> shall be used solely for purposes of this Action and shall not be used for any other purpose, including, without limitations, any business, proprietary, commercial or governmental purpose (Ex. Q).

Defendants insisted on a broader prohibition that barred the use of <u>any</u> information, <u>regardless</u> of designation:

> **Defendants' Proposed Paragraph 3:** <u>All Discovery Material and information provided by either party, regardless of designation</u>, shall be used solely for purposes of this Action and shall not be used for any other purpose, including, without limitations, any business, proprietary, commercial or governmental purpose (Ex. R).

Eventually, Albemarle agreed to defendants' broader prohibition, which is what now appears as paragraph 3 of this Court's Protective Order as well as the Protective Orders in Judge Parker's cases.

Now that defendants have been caught in violation of paragraph 3, they contend that the prohibition they wrote should be interpreted as the version that Albemarle originally proposed, but they rejected:

> Albemarle specifically claims that various individuals violated the protective order by "using" information from the litigation in other proceedings, <u>even though the protective order only forbids the use of</u>

<u>information that is actually confidential</u> (rec. doc. 386 at 4, ¶ 7) (emphasis supplied)

Such interpretative gymnastics demonstrates only that defendants are well aware that their actions violate the Protective Order.

### E.    Defendants' Pending Motion

As the Court is likely aware, the day after defendants dismissed Albemarle's concerns over their violations of the Protective Order, defendants moved this Court to unseal documents they had already shared with Mr. Roberts, and referenced in their reexamination request (rec. doc. 386).  Defendants seek to exculpate themselves by retroactively unsealing a document after it was disclosed. That has been tried before, and rejected:

> In arguing that the designation of the [confidential] report should be changed after the fact, defendants are missing the point. Even if the Court were to grant defendants' Motion to Traverse, it would not change the fact that a court order was violated. Accordingly, defendants' Motion to Traverse [the confidentiality designation] will be dismissed as moot.

*Walle Corp. v. Rockwell Graphics Sys.*, No. 90-2163, 1992 WL 165678, at *2 (E.D. La. July 6, 1992) (Ex. S); sanctions issued at *Walle Corp. v. Rockwell Graphics Sys.*, No. 90-2163, 1992 WL 245659 (E.D. La. Sep. 14, 1992) (Ex. T).[7]

Defendants' motion also seeks a prospective ruling from this Court that Dr.

---

[7]  Albemarle recently learned that defendants are now trying to get the PTO to expunge from their reexamination request, the explicit references to documents Albemarle filed under seal with this Court (Ex. U).  This is a meaningless exercise.  The documents have been publicly available on the PTO website since mid-August, defendants are not trying to expunge the Reffner Declaration or withdraw their request altogether, and this process does not address their misuse of information outside this lawsuit or their improper disclosures to the Robert Law Firm.

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 20 of 37

Reffner did not violate the Protective Order. Albemarle will respond to that motion separately because, among other defects, it seeks an advisory opinion from this Court and is, therefore, improper on its face. Moreover, defendants' motion fails to set forth all the facts necessary for this Court to render an informed opinion, including the fact that this is not the first time defendants were caught violating the Protective Order.

To the extent it is relevant here, the papers that defendants move to have unsealed were filed with this Court under seal because Albemarle believed that defendants' wished to have their interrogatory responses maintained in confidence. Albemarle has since learned that defendants do not object to its responses becoming public. At the time Albemarle filed the documents under seal, however, it was acting in what it believed to be defendants' best interest. Even if the documents are unsealed, defendants' trial counsel could not share them Mr. Roberts for use in a reexamination. Ironically, Albemarle is now being criticized for unilaterally deciding that defendants want their information maintained in confidence. No good deed . . .

### F. In July 2007, Albemarle Caught Defendants Violating The Protective Order And Received Written Assurance They Would Not Do It Again

A year ago, Albemarle was forced to move this Court for relief after defendants improperly instructed a deposition witnesses not to answer questions (rec. doc. 141). In opposing Albemarle's motion, defendants submitted Declarations from two of their employees. Defendants' employees are not authorized by the Protective Order to see confidential material, yet their Declarations revealed that they had been shown briefs that Albemarle had filed under seal.

Case 3:05-cv-01239-JJB-SCR    Document 390-1    09/11/08    Page 21 of 37

Albemarle immediately expressed its concerns to defendants.[8] Just as they do today, a year ago defendants claimed that they were entitled to unilaterally decide that a brief Albemarle had filed under seal could be shared with unauthorized individuals (Ex. V). Defendants also argued that briefs filed under seal, pursuant to the Protective Order, are somehow not covered by the Protective Order. *Id*.

Albemarle strongly disputed this strained interpretation of the Protective Order and indicated that it would call this violation to the Court's attention. *Id*. Rather than have their actions and meritless justifications revealed to the Court, defendants agreed they would never violate the Order again:

> Defendants are willing to agree that, going forward, neither party will disseminate any legal briefs or memoranda filed or served by the opposing party, which have been labeled as "Confidential" or "Highly Confidential" under the Protective Order, to any persons not then designated under Paragraph 5 of the Protective Order, <u>without the prior consent of the filing party</u>, which consent shall not be unreasonably withheld. *Id*. (emphasis added).

A few months later, Albemarle again was forced to seek relief based on defendants withholding relevant information during discovery (rec. doc. 160). Once again, defendants wanted to share confidential briefs with their employees. This time, however, they asked for permission in advance (Ex. W). Albemarle agreed. During that e-mail exchange, defendants reiterated that they would not disclose information to unauthorized individuals without prior consent from Albemarle:

---

[8]  Exhibit V contains the e-mail exchange between counsel. E-mail strings of this type can be difficult to read because they appear in reverse chronologic order and contain numerous boilerplate disclaimers. Thus, along with the original e-mails, Exhibit V includes more easily read versions.

Case 3:05-cv-01239-JJB-SCR    Document 390-1    09/11/08    Page 22 of 37

> As we advised you previously, we do not agree with your interpretation of the Protective Order in this instance. However, in order to avoid needless disputes, we agreed to obtain prior consent from Albemarle before circulating legal briefs which Albemarle has labeled Highly Confidential to anyone at Chemtura other than in-house counsel. *Id*.

Despite these repeated written assurances, and the clear prohibitions in the Protective Order, defendants secretly shared documents that Albemarle had filed under seal at least with Mr. Roberts. Moreover, defendants again raised the same shopworn excuses for violating the Protective Order, evidencing a lack of good faith and that their misbehavior would not stop absent strong action by this Court.

## III.    LEGAL STANDARDS

### A.    Contempt

Federal courts frequently issue protective orders to protect litigants against the improper disclosure or use of information exchanged during litigation. As part of their inherent power to regulate practice before them, courts may sanction those who violate such orders. *Greiner v. City of Champlin*, 152 F.3d 787, 789-790 (8th Cir. 1998) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991)). Violation of a protective order is contempt of court. [9]

A finding of contempt is appropriate where there is clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct of a party; and (3) the party failed to conduct itself in accordance with the order. *Lyn-Lea Travel v. Am. Airlines, Inc.*, 238 F.3d 282, 291 (5th Cir. 2002) (citing *FDIC v. LeGrand*, 43 F.3d 163,

---

[9]    Albemarle seeks sanctions based on civil contempt. If the Court decides that sanctions should be imposed to punish and to vindicate its authority, then it must find defendants in criminal contempt. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

170 (5th Cir. 1995)).

Although it plainly exists here, intent is not required for a finding of civil contempt. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223-225 (7th Cir. 1992) (affirming sanction of directed verdict against party that violated the protective order). Thus, it is irrelevant that defendants contend they believed that they were permitted to unilaterally decide whether to use and disclose information under the Protective Order. Moreover, a party "operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous." *Visto Corp. v. Seven Networks, Inc.*, No. 03-333, 2006 WL 3741891, at *8 (E.D. Tex. Dec. 19, 2006) (Ex. X).

An evidentiary hearing may be held before contempt sanctions are considered. *Walle Corp.*, 1992 WL 165678, at *2 (Ex. S). Albemarle seeks the exclusion of all individuals from further participation in this case who willfully ignored this Court's Order. To identify those involved, the scope of the disclosures, to whom they were made and their knowledge of the Protective Order, Albemarle requests limited discovery on this issue. Tellingly, neither defendants nor Mr. Roberts will respond to Albemarle's requests that they disclose what information was exchanged and who was involved. If defendants believed they acted appropriately, there is no reason to hide this information.

## B. Sanctions And Relief

The Fifth Circuit has held that "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant

18

for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citing, *inter alia, United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04, 67 S.Ct. 677, 701 (1947)) (affirming finding of civil contempt and award of damages for party's violation of temporary restraining order). The district court "has broad discretion in the assessment of damages in a civil contempt proceeding." *Am. Airlines,* 228 F.3d at 585 (citations omitted).

An order imposing sanctions should reflect that the following factors were considered by the Court: (1) the harm caused by the noncompliance; (2) the probable effectiveness of the sanction; (3) the burden the sanctions impose on the contemnor in light of his financial resources; and (4) the contemnor's willfulness. *Lamar Fin.*, 918 F.2d at 567 (citing, *United Mine Workers of Am.*, 330 U.S. at 303-04; 67 S.Ct. at 701).

## IV. DEFENDANTS SHOULD BE ENJOINED FROM FURTHER PARTICIPATION IN ANY REEXAMINATION

Albemarle asks this Court to enjoin defendants from further participation in the *inter partes* reexamination proceedings, including any appeals. Fed. R. Civ. P. 65. As detailed above, in preparing and submitting their reexamination request, defendants:

- Improperly used information obtained in this case through discovery and motions practice for purposes outside this litigation;

- Improperly used summary judgment in this litigation to induce Albemarle's response to their positions, then used that information in an attempt to repair the defects in those positions before seeking reexamination;

- Requested reexamination only after learning through motions practice that their arguments would likely be dismissed from this case;

- Failed to prevent their testifying expert, Dr. John Reffner, from improperly using and publicly disclosing information he obtained from this case in violation of the Protective Order and his written Undertaking;

- Failed to follow the express provisions of the Protective Order for challenging Albemarle's designation of papers filed under seal;

- Improperly disclosed information to the Roberts Law Firm;

- Permitted attorneys with the Roberts Law Firm to publicly disclose information learned during this litigation in a reexamination request;

- Permitted attorneys with the Roberts law Firm to use information learned during this litigation for purposes outside this lawsuit;

- Ignored repeated written assurances to Albemarle that they would not share information without Albemarle's prior consent; and

- Sought to justify their actions through disingenuous arguments clearly demonstrating a lack of good faith and refusal to abide by the Protective Order absent strong action by this Court.

Defendants irreparably tainted their request for reexamination. It would only compound and reward their misconduct if defendants were allowed to participate any further in the reexamination, either directly or indirectly. Once a protective order has been violated, injunctive relief is an appropriate remedy to prevent further violations. *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413-419 (E.D. N.Y. 2007) (granting injunction prohibiting further dissemination of material governed by protective order).

The reexamination request, when granted, will proceed through the PTO regardless of defendants' participation. Upon grant, the PTO will have considered defendants' arguments and will issue any Office Action the PTO feels is merited. Albemarle will respond to all Office Actions, just as it did when the '423 claims were originally granted. The injunction Albemarle seeks will preclude defendants from submitting comments to Albemarle's responses and from participating in appeals, either to the PTO Board of Appeals or to the Federal Circuit.

Further, as noted earlier, a final decision in this litigation will certainly precede,

and thus terminate, the reexamination. *Inter partes* reexamination will likely take several years and a final decision in this case on the merits of <u>all</u> issues raised by the pleadings will occur well before the reexamination proceedings are completed in the PTO. While Albemarle will have to incur the costs associated with the reexamination until then (estimated at $50,000-$100,000), defendants loose only the ability to participate in, what they know, is a redundant procedure that would not have been started but for their contempt and Protective Order violations.

## V. EXCLUSION OF DEFENDANTS' EXPERT, DR. JOHN REFFNER

### A. Dr. Reffner Used And Publicly Disclosed Information He Learned Solely In Connection With This Litigation

In January 2007, Dr. Reffner signed a written Undertaking swearing under oath that he had read and understood his obligations under the Protective Order and would abide by them (Ex. Y). He further conceded:

> I submit myself to the jurisdiction of the United States District Court for the Middle District of Louisiana for purposes of enforcement of the Confidentiality Order, and fully understand that violation of the Confidentiality Order is punishable by contempt of Court. *Id.* at ¶7.

Dr. Reffner has submitted two expert reports in this case. He has had access to all of Albemarle's Highly Confidential information. He has attended depositions of Albemarle's experts. Nevertheless, Dr. Reffner submitted a Declaration to the PTO to support defendants' reexamination request. In his now-public Declaration, Dr. Reffner states:

> Though I am aware of confidential methods used by the parties to the aforementioned litigation for measuring occluded free bromine in decabromodiphenylethane and decabromodiphenylethane wet cake, I have not seen any evidence or validation data to suggest that those methods are accurate to within thirty-five one-hundredths of one percent (0.35%) (Ex. I at ¶ 12).

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 27 of 37

While Albemarle strongly disagrees with their argument, it is clear that defendants believe that the accuracy of Albemarle's method for measuring occluded free bromine supports their reexamination request. It is an affront to this Court's authority to suggest that Dr. Reffner is free to disclose what he believes Albemarle's confidential information <u>does not say</u>. *Lyn-Lea Travel*, 283 F.3d at 291 (holding that the disclosure of contents of documents protected by a protective order is as worthy of sanction as is the disclosure of the documents themselves).

Defendants' justifications for Dr. Reffner speaks volumes about their bad faith and disregard for their obligations under the Protective Order:

> Nowhere in the declaration does Dr. Reffner identify whose confidential methods Dr. Reffner has seen or what those confidential methods are. (rec. doc. 386 at 3)

This is ridiculous. As seen above, Dr. Reffner prefaced his statement by telling the PTO exactly whose confidential methods he reviewed: "I am aware of confidential methods used by the parties . . . " Dr. Reffner then concludes: "I have not seen any evidence or validation data to suggest that <u>those</u> methods are accurate . . ." What this indicates is that defendants know Dr. Reffner's actions were improper, otherwise they would not deny what is actually written.

It should be noted also that defendants have engaged several expert chemists who are not authorized to see Albemarle's confidential information (rec. doc. 135). Any one of those experts could have opined on the content of the prior art, even on defendants' confidential methods. None of them, however, could have opined on the content of Albemarle's confidential methods, so they used Dr. Reffner.

Defendants also tried to justify Dr. Reffner's blatant misuse of information learned

in this case by claiming that the duty of disclosure to the PTO supersedes this Court's authority:

> Mr. Reffner has a duty to provide a full and complete disclosure to the USPTO and, as a result, he cannot fairly submit a declaration commenting on the absence of publicly known methods for measuring free bromine without acknowledging that he is personally aware of some confidential methods. (Ex. L at 1)

This, too, is ridiculous. The duty of disclosure to the PTO applies <u>only</u> to the patent owner, <u>not</u> defendants, and does not even apply to Albemarle until the reexamination is ordered. 37 C.F.R. §1.555 (the full text of §1.555 is included as Exhibit F). Moreover, if defendants actually believe what they claim, rather than it being a rationalization concocted after-the-fact, it means that Dr. Reffner and defendants will <u>continue</u> to disclose confidential information to the PTO, despite the Protective Order.

Dr. Reffner and the defendants are obligated to comply with the Protective Order and no imagined duty to the PTO supersedes this Court's authority. *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 953 (5th Cir. 2001) ("Also indicative of bad faith is the justification offered by plaintiffs' counsel to the district court that the public had a right to know about the [confidential information].")

Incredibly, even if Dr. Reffner actually believed what defendants claim, that he was obligated to disclose information to the PTO, he violated that obligation as well. The Reffner Declaration states:

> I have reviewed the publicly available prior art relating to this subject. There are no prior art publications describing a method for measuring occluded free bromine in decabromodiphenylethane wet cake, or even decabromodiphenylethane final product. Similarly, there are no prior art publications describing the variability associated with measuring occluded free bromine (Ex. I at ¶ 10).

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 29 of 37

Dr. Reffner's "duty to provide a full and complete disclosure to the USPTO" apparently did not require him to disclose that defendants' own prior art patent described a method for measuring occluded free bromine known as the vacuum melt method (Ex. Z at col. 9 lines 36-45). Dr. Reffner's Declaration also failed to disclose that defendants routinely used the vacuum melt method for years to test the occluded free bromine content of decabromodiphenylethane.[10]

The harm caused to Albemarle is manifest. Albemarle cannot correct the numerous errors in Dr. Reffner's Declaration before it is considered by the PTO. Under PTO regulations, once an *inter partes* reexamination request is filed, the patent owner is not permitted to submit any documents until the PTO decides whether to grant the request. 37 C.F.R. §1.939(b) ("Unless otherwise authorized, no paper shall be filed prior to the initial Office action on the merits of the *inter partes* reexamination."). When a request is based on half-truths, as is the case with the Reffner Declaration, there is no way for Albemarle to correct it.

As a result, if the PTO grants defendants' reexamination request -- a 96% probability -- that will trigger a duty on Albemarle to publicly disclose all material information in its possession, confidential and otherwise.

**B.    Dr. Reffner's Access To Albemarle's Confidential Information Is A Privilege, Not An Entitlement**

Dr. Reffner should be excluded from this case. Where a person has

---

[10] Defendants' use of the vacuum melt method as a routine measurement of the occluded free bromine content in their DBDPE was publicly disclosed during the Daubert hearing on May 28, 2008 (rec. doc. 337, at *e.g.*, 20:6 – 22:13 and 34:8 – 34:25). Defendants did not designate any portion of that transcript confidential.

demonstrated a disregard for a protective order, the court may bar them from further receipt of confidential information. *Visto*, 2006 WL 3741891, at *7-8 (barring two attorneys found to be violation of protective order from further receipt of confidential materials) (Ex. X). The Court may also strike an expert designation and prohibit a party from calling an expert witness at trial where confidential information was improperly released to the public.

As an expert witness, Dr. Reffner is in a position of great trust as he is given access to documents reflecting highly sensitive information belonging to Albemarle. Dr. Reffner's clear disregard for the terms of the Protective Order and his sworn Undertaking, demonstrates that he is unworthy of the Court's (and Albemarle's) further trust and is incapable of conducting himself in the manner required of an expert witness. Moreover, neither defendants nor Dr. Reffner have shown <u>any</u> remorse. Instead, they have tried to justify his public disclosure based on an imagined duty of disclosure to the PTO that does not exist. In fact, even if the PTO regulation that places a duty on patent owners could somehow be applied to Dr. Reffner, that duty does not automatically trump this Court's authority. At the very least, defendants were required under the Protective Order, and Dr. Reffner was required under his written Undertaking, to first ask Albemarle, then ask this Court, before violating the express terms of that Order.

For at least the foregoing reasons, the Court should strip Dr. Reffner of his designation as an expert witness in this case. His expert reports and other testimony should be stricken and he should not be permitted to testify at trial. Further, Dr. Reffner should be barred from assisting defendants and their other experts in any manner concerning this litigation and the reexamination.

25

While defendants are certain to complain that the exclusion of their expert is prejudicial, defendants are the beneficiaries of his misconduct, not the victims, and no doubt induced his violations of the Protective Order. Moreover, the Protective Order holds defendants liable for Dr. Reffner's actions (Ex. A at ¶ 7(c)). Rather than police their own expert, defendants asked him to improperly disclose information to support their reexamination request.

Furthermore, any harm caused by the exclusion of Dr. Reffner is mitigated by the fact the defendants have several other chemists designated as testifying experts. Indeed, Dr. David Bugay issued two expert reports in this case which mirror the opinions in Dr. Reffner's reports, so defendants will still be able to present the same defenses to the jury.

## VI. EXCLUSION OF ALL INDIVIDUALS ACTIVELY INVOLVED IN THESE VIOLATIONS

For many of the same reasons why Dr. Reffner should be excluded from this case, all individuals who were actively involved in the misuse and disclosure of information in violation of the Protective Order should also be excluded from further participation in this litigation. At present, Albemarle cannot identify specific individuals because the full extent of these violations is unknown at this time.

Given the completely disingenuous nature of defendants' excuses, Albemarle has grave concerns over how much information has been improperly disclosed, to whom, by whom and when. Given defendants' history and current excuses, Albemarle has no reason to be confident that this latest incident is the only such occurrence.

Albemarle, therefore, requests discovery followed by an evidentiary hearing to

determine the full scope of defendants' Protective Order violations and the identities of the individuals involved. The discovery would be limited to violations of the Protective Order and include subpoenas to the defendants, Dr. Reffner, Greenberg Traurig and the Roberts Law Firm. Depending upon what is learned, depositions may be necessary.

The discovery should be conducted on an expedited basis, requiring subpoena recipients to respond within ten (10) days of receipt, and that any depositions be completed twenty (20) days thereafter. Clearly, the discovery should be at the defendants' expense.

Once completed, Albemarle proposes a hearing be held in which it will apprise the Court on the scope of the Protective Order violations, the potential impact on or prejudice to Albemarle, the identity of individuals involved and the extent of their willful violations of this Court's Order.

## VII.    RELIEF FROM THE PROTECTIVE ORDER

When a conflict exists between complying with a court order and an agency's regulation, the proper course of action is to seek relief from the Court. Unfortunately, defendants' actions have created several continuing conflicts for Albemarle.

The duty of disclosure is triggered as soon as the PTO orders a reexamination and applies only to Albemarle:

> The individuals who have a duty to disclose to the Office all information known to them to be material to patentability in a reexamination proceeding are the patent owner, each attorney or agent who represents the patent owner, and every other individual who is substantively involved on behalf of the patent owner in a reexamination proceeding. (37 C.F.R. §1.555; Ex. F)

The first conflict created by defendants' misconduct concerns the fact that Albemarle's duty of disclosure to the PTO includes material information that Albemarle

27

learned during this litigation. This includes information, confidential or otherwise, covered under the Protective Order, even information that defendants believe is confidential to them. This is particularly true given Dr. Reffner's misleading Declaration.

Albemarle did not choose to be in this position. Defendants have knowingly created the problem, with full awareness of the PTO procedures and consequences, and they certainly cannot now hide behind the Protective Order if Albemarle has to disclose information that defendants designated confidential. Moreover, the PTO mandates that Albemarle comply with its disclosure duty within two months after the PTO issues the reexamination order, or as soon thereafter as possible. 37 C.F.R. §1.555. Thus, it is simply impractical to seek leave from this Court for every possible disclosure, even if defendants disagree that it is material.

Accordingly, Albemarle requests relief from the Protective Order which requires it to seek leave to submit information to the PTO that it learned during this litigation, regardless of any confidentiality designation. Albemarle will use its best judgment to submit only that information that is material to the PTO. Absent such relief, the already complex PTO reexamination proceeding will become even more complicated.

A second problem created by defendants' contempt concerns the fact that under the provisions of the Protective Order, Albemarle's trial team, exposed already to defendants' confidential information, is precluded from participating in the reexamination (Ex. A at ¶18). Absent relief, Albemarle must employ separate reexamination counsel who were not exposed to this information. However, by definition, Albemarle's reexamination counsel cannot possibly know what material information has been developed in this litigation and as soon as they do, they too are excluded. Thus,

Case 3:05-cv-01239-JJB-SCR   Document 390-1   09/11/08   Page 34 of 37

Albemarle requests relief from the Protective Order to permit its trial team to participate in the reexamination of the patent in-suit and to communicate with any reexamination counsel to the extent reasonably necessary to properly prosecute the reexamination. Having knowingly placed Albemarle in this very difficult position by violating the Protective Order, defendants should not be rewarded by inflicting still further expense on Albemarle by denying its trial team the opportunity to assist in undoing the wrongs caused by defendants.

Finally, defendants' arguments in the reexamination request mirror their summary judgment positions. Albemarle has already incurred legal expenses to assess and respond to those arguments. Albemarle should not have to incur the same costs a second time by having its reexamination counsel assess the same arguments. Accordingly, Albemarle requests leave to share its corresponding answering briefs and attendant papers with its reexamination counsel (specifically rec. docs. 332 and 361).

## VIII.    COSTS AND FEES

Clearly, Albemarle should be reimbursed for all reasonable costs and attorney fees associated with having to bring this motion, appear at any hearings and conduct an investigation into the scope of defendants and Dr. Reffner's Protective Order violations.

## IX.    CONCLUSION

For at least the reasons stated above, Albemarle requests that the Court issue an Order to Show Cause, or otherwise find defendants in contempt for their numerous violations of the Protective Order. Albemarle respectfully requests the relief detailed in its motion, including: the exclusion of Dr. Reffner; enjoining defendants from participation in the PTO reexamination proceedings; limited discovery into the scope of

Case 3:05-cv-01239-JJB-SCR    Document 390-1    09/11/08    Page 35 of 37

defendants violations of the Protective Order; a hearing to determine any other individuals who should be excluded from this case; and relief from the Protective Order to permit Albemarle's trial team to assist in the reexamination proceedings.

Albemarle also requests expedited briefing (10 days for an answering brief, 7 days for a reply), reimbursement of its costs and fees, and any additional relief the Court feels is appropriate under the circumstances, including a finding of criminal contempt and appropriate fine.

Respectfully submitted,

**KEAN, MILLER, HAWTHORNE, D' ARMOND, McCOWAN & JARMAN L.L.P.**

By:    /s/ L. Victor Gregoire
        G. William Jarman (7238)
        L. Victor Gregoire (22400)
        Twenty-second Floor
        One American Place
        Baton Rouge, Louisiana 70825
        Telephone: (225) 387-0999
        Facsimile: (225) 388-9133
        *Attorneys for Plaintiff, Albemarle Corporation*

**OF COUNSEL**:
Rudolf E. Hutz
Eric J. Evain
**CONNOLLY BOVE LODGE & HUTZ, LLP**
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899-2207
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

**DATED:** September 11, 2008
630269_1

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2008, a copy of the foregoing

**ALBEMARLE'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS
SHOULD NOT BE HELD IN CONTEMPT AND SANCTIONED
FOR VIOLATING THIS COURT'S PROTECTIVE ORDER**

was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of

this filing will be sent to the following by operation of the Court's electronic filing system

and by the means indicated to:


**FEDERAL EXPRESS**
Brian A. Jackson
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street
Suite 5000
New Orleans, LA 70139-5099

**FEDERAL EXPRESS**
Richard D. Harris
Jeffrey P. Dunning
**GREENBERG TRAURIG LLP**
77 West Wacker
Suite 2500
Chicago, Illinois 60601


Baton Rouge, LA, this 11th day of September, 2008.


  /s/  L. Victor Gregoire

L. Victor Gregoire (22400)
*Attorney for Albemarle Corporation*
KEAN MILLER HAWTHORNE
  D'ARMOND McCOWAN & JARMAN L.L.P.
Twenty-second Floor
One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 387-0999
Facsimile: (225) 388-9133
E-Mail: Victor.Gregoire@keanmiller.com